THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
PABLO LOZANO DÍAZ, Defendant and Appellant.

No. CR-62-125.     Decided June 28, 1963.

*Rafael Vázquez Colón,* counsel designated by the Supreme Court to assist appellant on appeal. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant having been convicted in 1958 by the Superior Court, Caguas Part, of the subsequent offense of burglary in the first degree, he was sentenced to serve from 2 to 15 years in the penitentiary. He appealed, but later he desisted from the appeal taken. When he had already served three years' imprisonment, he filed a petition for habeas corpus in the Superior Court, San Juan Part. The habeas corpus was transferred to the Caguas Part for hearing. On the day set for the hearing, when appellant learned that the petition would be heard before the same judge who sentenced him, he informed that he desisted from his petition. *Cf. Capeles* v. *Delgado, Warden,* 83 P.R.R. 668 (1961). Thereupon the district attorney called the judge's attention to the fact that when defendant was prosecuted he admitted the allegation on subsequent offense which appeared in the information, and that it was therefore mandatory to impose a minimum penalty of 10 years for the second offense. Section 56 of the Penal Code, 33 L.P.R.A. § 131. During this incident appellant was not assisted by counsel.[1] In view of district attorney's

---

[1] Defendant was entitled to be represented by counsel on that occasion in order, among other things, to be in a position to allege before

allegation, the judge forthwith set aside the sentence imposed three years ago and imposed a new one of 10 to 15 years' imprisonment. The following day the trial judge set aside the judgment rendered on the ground that appellant was not assisted by counsel at the act of pronouncing sentence, and ordered that he be summoned for a later date. It appears that he was assisted by counsel when the sentence was subsequently pronounced. The judge imposed from 10 to 12 years.

He appealed to this Court and we appointed an attorney to render him legal assistance.

The attorney designated raises the question that the new sentence is contrary to law. He maintains that the penalty imposed in 1958 could not be amended after he began to serve it.

In *Santiago v. Jones, Warden*, 74 P.R.R. 578 (1953), we stated the general rule on this matter as follows:

"The power of a trial judge to reconsider a sentence within a criminal prosecution is limited by certain rules which must be clarified before reaching a definite conclusion. The first rule is that the offender must be still under the custody of the trial court, without having undergone any part of the original sentence; the second rule is that reconsideration does not lie unless there is a mistake in the name, in the punishment imposed, or in the application of the law to the proved facts in the prosecution, which might justify the reconsideration of the original sentence; and third that certain circumstances justifying the mitigation or aggravation of the sentence must be present."

The foregoing states the general rule. It refers to valid sentences.

In *Santiago* the judge had imposed a valid sentence upon a defendant and after sentencing him the defendant escaped.

---

the judge that reconsideration of the sentence of 1958 was not proper in law, but the fact is that he has had that opportunity before this Court. The fact that the question is raised before this Court for the first time does not prejudice him at all. Moreover, he could have raised the question when he was sentenced on reconsideration when the judge asked whether there was any impediment for passing sentence.

After he was captured the judge reconsidered his first sentence and imposed a heavier one. It was held that he could do so.

In another case decided by this Court in which the general rule is stated, *People* v. *Carbone*, 59 P.R.R. 608 (1941), the penalty originally imposed was valid. Defendant having been charged with simple assault and battery, the judge convicted him and sentenced him to pay a fine of $2. Upon moving for reconsideration, he imposed $5. We held that the judge had abused his discretion and reinstated the original penalty.

The two preceding cases are cited in *People* v. *Super. Ct.*; *González, Int.*, 81 P.R.R. 874 (1960), making reference to the rule stated therein; however, the facts under consideration involved the dismissal of certain informations.

■ In the compilation of decisions appearing in the Annotation *Criminal Law—Changing Sentence*, 168 A.L.R. 706, 719, there is set forth the rule as announced by a great majority of the cases:

"It is generally conceded that an invalid sentence—one that the court has no jurisdiction or power to impose—may be replaced at any time, either before or after execution of the sentence has begun or the term has ended,[2] by a sentence that is valid; in such a case the trial court has the power to substitute a legal and valid sentence for the former illegal one."[3]

---

[2] In a great majority of jurisdictions the law prescribes a term within which the courts act. In Puerto Rico the courts of first instance act during the entire year; there are no terms.

[3] In 5 Wharton, Criminal Procedure, § 2191 (1957 ed.), the rule is stated as follows:

"... *When a court has imposed a sentence which is void* either because of lack of jurisdiction, *or because it was not warranted by statute for the particular offense, this can be set aside and a valid sentence substituted at any time, either before or after execution of the sentence has begun* .... If, however, the sentence originally imposed is within the power of the trial court and is merely erroneous or irregular, such sentence is not invalid or 'void' and comes within the applicable rule governing the making of a change in sentence after the defendant has entered upon its execution." (Italics ours.)

■ The case of *Hayes* v. *United States*, 249 F.2d 516 (D.C.Cir. 1957), *cert. denied,* 356 U.S. 914 (1958), makes a study of the different rules bearing on this matter. It is stated that if the original sentence is valid, such sentence may not be increased if execution thereof has begun. Reference is also made to the rule which we stated in *People* v. *Garcia,* 83 P.R.R. 414 (1961). If defendant appeals or files a habeas corpus challenging an invalid sentence, it has been held that the court may increase the penalty upon passing new sentence. After stating these two situations, it maintains that if the sentence imposed does not conform to the penalty prescribed by law, the court has authority to pass a new one which conforms to law even though execution of the original penalty has begun. It considers the case of *Bozza* v. *United States,* 330 U.S. 160 (1947), which we followed in *People* v. *Garcia,* and after analyzing it in the light of the facts presented therein, it continued:

". . . The original sentence in *Bozza* was said to be an 'invalid punishment' in that it was for imprisonment alone and omitted any fine, though a fine also was required by the statute. It is true that only five hours elapsed before the correction was made and that in the interim defendant, though in a federal place of detention, had not yet been taken to a penitentiary; but this appears not to have been the basis for the ruling that double jeopardy did not attach. The Court said the error in the sentence was inadvertent, as was the error in the present case, and that, if the error could not be corrected in the manner there used, no valid sentence could be imposed at all, with the result that a prisoner whose guilt was established by regular verdict would escape punishment altogether. The Court continued:

"The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. See *King* v. *United States,* 69 App. D.C. 10, 15, 98 F.2d 291, 296. In this case the court 'only set aside what it had no authority to do, and substitute[d] directions required by the law to be done upon the

conviction of the offender.' In re Bonner, *supra*, [151 U.S. 242] at page 260, 14 S.Ct. [323] at page 327, 38 L.Ed. 149. It did not twice put petitioner in jeopardy for the same offense.

".        .        .        .        .        .        .

"We think we must apply the *Bozza* ruling to the present case. The Act of July 18, 1956, specified the applicable penalty; none other could be validly imposed. True it is that defendant had begun to serve time; but as we read *Bozza* this time was not lawful punishment the augmentation of which, to make the sentence equal to the statutory penalty, constituted double jeopardy. We assume that to avoid double jeopardy the resentence must be made effective as of the date of the original sentence; that is, that the defendant is not required to serve again the time he has been imprisoned by reason of the invalid sentence."

Thus, we see that the rule announced in *Santiago* is limited to the sentences which have been validly pronounced in pursuance of law. To the same effect: *Reyes* v. *United States*, 262 F.2d 801 (5th Cir. 1959); *Orrie* v. *United States*, 302 F.2d 695 (8th Cir. 1962); *Mathes* v. *United States*, 254 F.2d 938 (9th Cir. 1958); *United States* v. *Krimsky*, 207 F.Supp. 208 (D.C.S.D.N.Y. 1962); *State* v. *Porks*, 36 N.E.2d 42 (Ohio 1941); *State* v. *Shilinsky*, 81 N.W.2d 444 (Iowa 1957); *People ex rel. Abrahamson* v. *Snyder*, 81 N.Y.S.2d 538 (1948); 83 N.Y.S.2d 82 (1948); Annotation, *Criminal Law—Changing Sentence*, 168 A.L.R. 706–19; Note, *The Judicial Finality of Criminal Sentence*, 44 Harv. L. Rev. 967 (1931).

■ The rule is that a sentence which is contrary to law is null and void. The court has no power to pronounce it. ". . . [T]he penalty statutes are themselves jurisdictional, that is to say . . . they delimit the very power of the court." *De Benque* v. *United States*, 85 F.2d 202 (D.C. Cir. 1936). If the law prescribes a minimum of 10 years, the judge cannot impose two. His action is void because it is contrary to the express statutory provision. And the judge may at any

time correct the error in order to conform the sentence to the law. In *State* v. *Peters*, 366 P.2d 148 (N.M. 1961), *cert. denied*, 82 S.Ct. 849, the court stated as follows in considering a question similar to that under consideration:

"Appellant contends that the first sentence was merely irregular and, having been partially executed by him, the court was without jurisdiction to change the sentence. There is no merit to this contention. If the accused had been committed pursuant to a valid sentence, perhaps a further discussion would be warranted and possibly a different result would be reached; however, such is not the case. Sentences must be imposed as prescribed by statute, § 41-17-1, 1953 Comp. The first sentence was not merely irregular; being unauthorized by law, it was null and void, and Judge Swope was warranted in disregarding it as mere surplusage. *State* v. *Lucero*, 48 N.M. 294, 150 P.2d 119; *Jordan* v. *Swope*, 36 N.M. 84, 8 P.2d 788; *In re Lujan*, 18 N.M. 310, 137 P. 587. See Notes 69 A.L.R. 1177, 141 A.L.R. 1225 and 168 A.L.R. 706. Compare *Ex parte DeVore*, 18 N.M. 246, 136 P. 47. And a void sentence may be vacated even though it has been partially served. *United States* v. *Bozza*, 3 Cir., 155 F.2d 592; *Bryant* v. *United States*, 8 Cir., 214 F. 51, *State ex rel. Cutrer* v. *Pitcher*, 164 La. 1051, 115 So. 187."

And in *Mathes* v. *United States*, 254 F.2d 938 (9th Cir. 1958), it is said: "It is well settled that a sentence which does not comply with the letter of the criminal statute is not only erroneous but void." See, also, *Johnson* v. *Hand*, 367 P.2d 70 (Kan. 1961).

■ It is well to point out that even those sentences which conform to law at the time they were pronounced may be amended after entering upon service, if the amendment is favorable to the prisoner. *United States* v. *Benz*, 282 U.S. 304 (1931).

■■ The case of *Benz* also disposes of the contention that the courts are without power to change the sentences after execution has begun. If they can be reduced after defendant has passed from the judicial to the executive cus-

tody, evidently there is also power to correct the sentences when the sentence imposed does not comply with the express provisions of the law, if there is no other legal impediment. Rule 35 of the Federal Rules of Procedure[4] authorizes the federal courts to correct any illegal sentence at any time. If this were contrary to the Constitution because it violates the separation of powers—which is the basis of the theory of those who contend that there is no authority to do so because defendant has passed from the judicial to the executive custody—a rule of procedure could not authorize it. As stated in *United States* v. *Krimsky, supra,* that rule was a codification of existing law. It has been held that this is an inherent power of the courts. *Lyons* v. *Goldstein,* 47 N.E.2d 425, 429 (N.Y. 1943); *People* v. *Hemmerich,* 162 N.Y.S.2d 701 (1957). And if the defense of former jeopardy were applicable to facts such as those present in this case, a rule of procedure could not bar the application thereof.

In *Estremera* v. *Warden,* 74 P.R.R. 188 (1952), this Court had already adopted the doctrine to the effect that if the judgment is void because it does not conform to law, such judgment could be reconsidered at any time at the instance of the trial court itself.

In *Estremera* petitioner was sentenced on December 23, 1946, to serve from two to eight years' imprisonment in the penitentiary. Later, on March 28, 1950, he was convicted in two cases after pleading guilty and sentenced to serve from two to eight years' imprisonment in each case, to run

---

[4] The rule provides as follows:

"The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the Supreme Court denying an application for a writ of certiorari."

Rule 185 of the new Rules of Criminal Procedure is similar to Federal Rule 35.

concurrently with the penalty imposed in the first case. "On February 27, 1951 the District Court of San Juan, *motu proprio*, brought petitioner before court, assisted by an attorney, and in open court modified the sentences of March 28, 1950 ordering that the same be served concurrently with each other after the accused had served the term of from two to eight years' imprisonment in the penitentiary, which was imposed on him on December 23, 1946." This sentence was reconsidered the following day in order to reduce those corresponding to the last two cases to a term of one to three years, but always concurrent, and to be served after execution of the first sentence. In providing that the sentences imposed in the last two cases will be served after execution of the first, the judge based his action on § 3 (e) of Act No. 108 of May 12, 1943, 34 L.P.R.A. § 1033. What the court actually did was to conform the sentence to the statutory penalty.

In deciding the question, we said:

"A modification of sentence which implies an increase in the punishment or penalty imposed on the accused lacks validity especially when he has begun to serve the original sentence. [Citations.] If in two sentences it has been determined that both shall run concurrently, a subsequent modification of these sentences to the effect that they shall be served consecutively lacks validity since it involves an increase in the punishment or in the penalty. [Citations.] Nevertheless, if the original sentences, or the penalties imposed by them, are null and void they can be later modified even if they increase the punishment or penalty. [Citations.] An invalid judicial action should not entail legal consequences and public policy should permit legal remedy of a sentence which is contrary to law. The right of a defendant not to be twice put in jeopardy for the same offense, should be protected as far as possible, but an accused should not be benefited by a judicial finding which is contrary to law."

Having established the power of the courts to correct the sentences which are contrary to law, the trial court did not

err in resentencing appellant. The time which he has served of the sentence imposed in 1958 shall be deducted.

The judgment will be affirmed.

Mr. Justice Santana Becerra dissented in a separate opinion in which Mr. Justice Belaval and Mr. Justice Hernández Matos concur.

—O—

MR. JUSTICE SANTANA BECERRA dissenting, in which MR. JUSTICE BELAVAL and MR. JUSTICE HERNÁNDEZ MATOS concur.

### San Juan, Puerto Rico, June 28, 1963

On October 28, 1958, the Caguas Part of the Superior Court convicted Pablo Lozano Díaz of subsequent burglary in the first degree and sentenced him to serve from 2 to 15 years' imprisonment in the penitentiary at hard labor. On October 5, 1961, almost three years after entering upon execution of the sentence, which was final since it had not been annulled at the instance of defendant, the Superior Court reopened the criminal prosecution, recalled him, and imposed a sentence of 10 to 12 years' imprisonment in the penitentiary, at hard labor. The sentence reads as follows:

"SENTENCE ON RECONSIDERATION

"Whereas, on September 25, 1961, this case was called for the hearing of the habeas corpus filed by defendant therein.

"Whereas, it appears from the record that the court through inadvertence passed sentence on October 25, 1958 without taking into consideration the allegation of subsequent offense.

"Therefore, defendant appears today personnally and assisted by his counsel, Gerardo Almeda Aponte, for the purpose of hearing his sentence on reconsideration in this case, and defendant having failed to allege any legal impediment, the court proceeds to do so and sentences the said Pablo Lozano Díaz to serve from TEN TO TWELVE YEARS' IMPRISONMENT IN THE PENITENTIARY AT HARD LABOR, without costs.

"And it is hereby ordered that defendant be taken from this court to the Commonwealth Penitentiary where he shall be committed for the term fixed in this sentence."[1]

It seems to me that, if there is any occasion in which the constitutional provision contained in our Bill of Rights which declares that "No person shall be twice *put in jeopardy* of punishment for the same offense" appears to be a vacuous expression, lacking significance and content, that occasion was produced by the trial court as a result of the outcome in this case.

Two leading concepts are intertwined in this case which are mutually integrated for a desirable purpose. One involves the extent of the judicial function in criminal prosecutions—when is such function considered terminated; the other, the scope and effect of the constitutional guarantee prohibiting double jeopardy of punishment. As to the first, there are conclusive expressions in our cases which we need not recite because they represent the feeling of a well-established doctrine in Anglo-American case law, to the effect

---

[1] Appellant had filed a petition for habeas corpus in the Superior Court of San Juan alleging that he did not have legal assistance. The petition was transferred to the Superior Court of Caguas where he was originally prosecuted. At the hearing of the habeas corpus defendant withdrew his petition, saying: "I withdraw it because I have no assistance of counsel. I can not allege it here again because that would be lack of respect to the court, and if it is heard it will be denied. I filed the habeas corpus to be heard in San Juan." Thereupon: "Hon. Judge: In the criminal case I gave you from TWO to FIFTEEN years. The district attorney invites the attention of the court to the fact that the judgment is erroneous, that the minimum is not TWO but TEN years. I must correct the judicial error and instead of TWO it is TEN years." . . . "Hon. Judge: You were given an opportunity. Having heard the statements of petitioner and in view of the fact that the district attorney has called the court's attention to the error committed in passing sentence, the court sets aside the previous sentence, corrects the same, and imposes from TEN to FIFTEEN years' imprisonment." This sentence, which was imposed on September 25, 1961, was vacated the next day by order entered in the criminal prosecution for burglary, setting forth that defendant was not duly assisted by counsel (in the habeas corpus). He was ordered to appear again on October 5 for pronouncement of the sentence on reconsideration.

that such judicial function ends after the defendant has begun to serve the sentence and remains in the custody of the executive power. See *Arroyo* v. *People*, 41 P.R.R. 727 (1931) ; *People* v. *Carbone*, 59 P.R.R. 608, 615, 616, 617 (1941).; *Estremera* v. *Jones, Warden*, 74 P.R.R. 189, 192 (1952) ; *Santiago* v. *Jones, Warden*, 74 P.R.R. 578, 581 (Belaval), 587 (Snyder), 588 (Negrón Fernández) (1953) —on this question there were no dissenting votes; *People* v. *Superior Court*, 78 P.R.R. 135, 136 (1955).

In the last case cited, after defendant had served three years of a sentence of 20 to 25 years' imprisonment, the trial court, on motion of defendant, reconsidered the same reducing it to 10 to 25 years. We set aside this action even though it was favorable to defendant, recognizing the lack of judicial power under the established doctrine. In *Arroyo* v. *People, supra*, we said (at 729), and have repeated with approval, referring to those cases holding that after execution of the sentence has begun the court is without *power* to correct it: "Mr. Justice Miller in *Ex parte Lange, supra*, shows that the principle underlying these decisions is something similar to a second jeopardy. The court in that case says that the reason why a man should not undergo a second *or a severer judgment* when the first is in process of execution, is the same or similar *as in the case of a second trial*, after a conviction or an acquittal." (Italics ours.)

No matter how much the facts are embellished, that was precisely what happened to Lozano Díaz in the Superior Court. He was subjected to a second prosecution without the first having been annulled at his instance; he *was put in double jeopardy* and, what is more, the jeopardy became a reality and he was punished for the second time. If that is not prohibited by the constitutional provision, I do not know then what it prohibits. If that is correct three years after serving a sentence, it would be correct after ten years, and would likewise be correct after having served the same

and the man already free. There would be only one difference of *degree* between both situations, but the principle of law which sustains one would unquestionably sustain the other.

The impression seems to be that as a result of the holding in *Bozza* v. *United States*, 330 U.S. 160 (1947), the old and established doctrine has changed, owing perhaps to certain generalizations made in that case. Something of that impression permeates the collateral statements made by Mr. Justice Ortiz in *Estremera* v. *Jones, supra*, a case which it is well to clarify did not pose the issue of double jeopardy.

After a careful reading, I do not believe that *Bozza* warrants a change in the doctrine. The Supreme Court stressed the facts. The statute under which defendant was convicted prescribed a minimum fine and imprisonment. Only imprisonment was imposed when he was sentenced. Defendant was taken to the office of the *marshal* and from there to a detention jail awaiting transportation to the penitentiary where he was to serve the sentence. About *five hours* later the judge recalled him and resentenced him, imposing also a fine. It is obvious, and it has so been held, that when defendant was resentenced he had not begun to serve the sentence. The action of the trial judge was upheld. Yet, certain statements made in that decision should not be taken divorced from the facts, particularly in view of the source given by the court—the *In re Bonner* case.

The somewhat impressing expression that "This Court has rejected the doctrine 'that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence,'" and that "In this case the court 'only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender'" (330 U.S. at 166, 167), were copied from the *Bonner* case. It is therefore necessary to examine the occasion and the legal background in which those pronouncements

were originally made in order to evaluate their scope and the scope of the decision in *Bozza*, as well as its relevancy to a situation such as that in the case before this Court.

*In re Bonner*, 151 U.S. 242, involved a habeas corpus in which defendant himself assailed the sentence. This presents forthwith one of the classical exceptions in which the constitutional guarantee cannot be invoked if, as a result of his action, defendant must undergo a second prosecution or a second sentence setting aside the former. A federal court sentenced Bonner to imprisonment in a state penitentiary. The habeas corpus was issued and it was held that the sentence was illegal on that account. The question on the disposition of the petition was then raised. Defendant alleged that he should be set at liberty. The Supreme Court ruled that he had no right, stating that his prosecution had been valid in all respects, only the pronouncement having been erroneous. It is in connection with this point and for the purposes of decision thereof that the statements are made (151 U.S. 259, 260, 261) which are later reproduced in *Bozza*, and which in the light of the facts of the latter they may even be *dicta*. Moreover, the statement in *Bonner* was copied in turn from the case of *Beale* v. *Commonwealth*, 25 Penn. St. 11, made in a petition for *appeal*. A second jeopardy or prosecution as a result of an appeal taken by defendant is another classical exception to the constitutional guarantee not to be put in jeopardy of being punished twice.[2]

---

[2] The other cases cited in *Bozza* in the pertinent part: *Barrow* v. *United States*, 295 Fed. 949, was an *appeal* in which judgment was reversed and resentence ordered; *Jordan* v. *United States*, 60 F.2d 4, 6, was another *appeal*, and it seems strange that the rule was followed and it was said: "It is obvious that the defendant was *in no way injured* by the amendment of the sentence; and, since *he had not entered upon the service thereof*, it was within the power of the District Court to make the amendment, under the rule laid down in *United States* v. *Benz*, 282 U.S. 304 [citations]." (Italics ours.) *King* v. *United States*, 98 F.2d 291, a second sentence was imposed after defendant was serving the first, but it was the result of a petition for habeas corpus in which defendant was

In view of the particular facts of *Bozza* and of all those circumstances, I refuse to believe that this decision constitutes authority, directly or indirectly throughout the application given by other courts, to support constitutionally the situation in Lozano Díaz. It could hardly be if we consider the position assumed by the Supreme Court on this constitutional guarantee in subsequent cases of utmost significance.

Eleven years after the decision of *Bozza*, the Court of Appeals for the Ninth Circuit confronted a similar situation in *Deutschmann* v. *United States*, 254 F.2d 487 (1958), *cert. denied*, 357 U.S. 928. The next day after defendant was sentenced on a third count, to run *consecutively* at the end of another sentence of 15 years on count one, and while defendant was still under the custody of the *marshal* and awaiting transportation to a penitentiary, he was recalled to court and resentenced, and the sentence corrected as to the third count, which was illegal. The issue of former jeopardy was raised. The Court of Appeals considered the decision in *Bozza*, stating as follows: "Appellant first asserts that it is unconstitutional to increase a sentence after the prisoner has begun serving it. *This is of course correct*." (Citation.) The issue of double jeopardy was dismissed in the light of the facts of the case, and the Court of Appeals continues: (at 490) "It is well established that where there are consecutive sentences, they are served in the same order in which they appear in the indictment. Thus, when appellant entered the county jail, he began serving the sentence he received under count 1, and any increase in the time under count 3 was *before* service of the sentence rendered on that account had begun." (Italics ours.)

---

successful; and lastly, *De Benque* v. *United States*, 85 F.2d 202, the question was the power to correct a void or erroneous sentence after the end of the term at which it was entered and after entering upon execution thereof; however, the second sentence was a milder one.

In *United States* v. *Rosenstreich*, 204 F.2d 321, decided in 1953, also subsequent to *Bozza*, the Second Circuit vacated a resentence increasing the fine. Defendant was sentenced on June 30, 1952, to pay a fine of $1,000 and to be imprisoned one year on probation. On July 8, 1952, the sentence was vacated and another passed increasing the fine to $10,000 and deducting 10 days from the prison term, also remaining on probation. Said Mr. Justice Frank: "It is well settled that, thanks to double-jeopardy provision of the Fifth Amendment, a federal court may not increase (a) a sentence of imprisonment, once execution of the sentence has begun, or (b) a sentence to pay a fine, after the fine first imposed has been paid. We think that, for this purpose at least, probation—which has been called an 'authorized mode of mild and ambulatory punishment'—should be deemed the equivalent of imprisonment. A probationary period starts when the judge imposes sentence. . . . We think that the sentence imposed on June 30 must be considered a unit. Accordingly, it had been executed in part before July 8, and the judge's action on that date, by augmenting the fine, was beyond his lawful powers." Mr. Justice Hand voiced his doubt as to whether the placing on probation started the execution of the sentence, but he was of the opinion, going even farther, that since defendant's counsel had the money in court with which to pay the fine before it was increased, the ability to pay the fine, even absent the formal act of a tender, should operate as the equivalent of its payment. He therefore concurred with the Court in vacating the sentence.

*Oxman* v. *United States*, 148 F.2d 750 (1945), *cert. denied*, 325 U.S. 887, presents a similar situation. The Eighth Circuit said: "The general rule is that judgments, both civil and criminal, are within the control of the court during the term at which they are made. For that time they are deemed to be 'in the breast of the court,' subject to be amended, modified, or vacated. [Citation.] The rule is subject to the

limitation that in criminal cases a sentence 'already partly suffered cannot be increased.' [Citations.] The reason for the limitation is that to increase the sentence after it has been served in part subjects the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides. . . . A sentence may be reduced after it has been partly served, but it may not be augmented. *It is not a jurisdictional but a constitutional question.*" [Citation.] (Italics ours.) It was held that defendant had not started to serve his sentence and, therefore, that the court had jurisdiction to recall him and to amend the sentence.[3]

In *People* v. *Thomas*, 342 P.2d 889 (1959), the situation of facts was as follows, as stated in the opinion: Defendant was charged with possession of heroin and with having suffered a previous conviction of the same offense. He pleaded not guilty. He was tried on March 17, 1958 and the judge found him guilty. The record of the previous conviction was admitted in evidence, and continued the question of such prior conviction to April 7, 1958, the date set for hearing on defendant's application for probation. Defendant was not sentenced.

On April 7 he was brought to court. The court denied probation and without mention of the previous conviction sentenced defendant to six months in jail. This sentence was not officially entered in the minutes. An order was prepared, directed to the county sheriff, authorizing him to hold the defendant pending such further disposition as the court may order. The deputy sheriff took defendant to the jail, where

---

[3] *Cf. Acme Poultry Corp.* v. *United States*, 146 F.2d 738 (4th Cir. 1944), *cert. denied*, 324 U.S. 860; *Bayles* v. *United States*, 147 F.2d 171 (8th Cir. 1945); *Rowley* v. *Welch*, 114 F.2d 499 (D.C. Cir. 1940); *Viel* v. *Potter*, 129 A.2d 230 (Conn. 1957); *Clark* v. *Memolo*, 174 F.2d 978 (D.C. Cir. 1949); *González* v. *United States*, 247 F.2d 489 (1st Cir. P.R. 1957), *cert. denied*, 356 U.S. 913; *Franey* v. *Florida*, 211 F.2d 447 (5th Cir. 1954); *Ekberg* v. *United States*, 167 F.2d 380, 388 (1st Cir. P.R. 1948).

he arrived at 3:15 p.m. In the meantime the courtroom clerk noticed that the prior conviction had not been disposed of and called the attention of the prosecuting attorney, defendant's counsel and the judge, who were still in the courtroom, and telephoned the sheriff's office and asked that defendant be returned to court as soon as he arrived at the jail. Defendant was returned to court at 3:35 p.m., and subsequently, at 3:39, after he had been returned, the remanding order referred to above was received in the jail. The opinion reads: "Thus defendant, so far as the sheriff's records disclose, was at no time held in jail in service of the jail sentence which had been pronounced at the morning session of the court." Defendant was resentenced at 4:50; the judge stated that that morning, through the busyness of the calendar, he had overlooked the fact of the prior conviction, and sentenced him to prison. This second sentence was the only sentence officially entered in the minutes. Those are the facts of *Thomas* and decision must be made thereon in the light of those facts. That is why the Supreme Court of California said: "But constitutional double jeopardy, whatever the stage of the proceeding, should be a *substantial* rather than a *mechanical* concept. [Citation.] Here defendant was not in any substantial sense punished under the jail sentence by being transported to, and at once returned from, the jail. The lapse of a few hours between the pronouncement of the original sentence and the pronouncement of the corrected sentence could not have prejudiced defendant. It would be absurd to speculate that he might have arrived at state prison at a substantially earlier date, so as to start the running of time toward his eventual release . . . if he had been sentenced to prison in the morning rather than in the afternoon. Nor does it appear that defendant had begun service of the county jail sentence under tests which have been suggested in answer to the question 'What constitutes commencement

of service of sentence, depriving court of *power* to change sentence.' " (Italics ours.)

In *Mathes* v. *United States*, 254 F.2d 938 (9th Cir. 1958), immediately after defendant was sentenced to less than the minimum but in his absence from the courtroom, the judge was advised of the fact, the court vacated the judgment and ordered that defendant return at 2:00 p.m. of that day, and he was resentenced.

In *Orrie* v. *United States*, 302 F.2d 695 (8th Cir. 1962), the resentence was pronounced three days later (it does not appear whether or not defendant had already started to serve the previous sentence), and although reference is made to the *Bozza* case; the Court of Appeals applied Rule 35 of the Federal Rules of Procedure, without a similar rule having been effective here: "The court may correct an illegal sentence at any time."[4]

In *Hayes* v. *United States*, 249 F.2d 516 (D.C. Cir. 1957), *cert. denied,* 356 U.S. 914, a sentence was corrected two months after entering upon its execution. It is expressly stated that an illegal sentence may be corrected even though execution has begun and action is taken by the Government. In *United States* v. *Krimsky,* 207 F.Supp. 208, the previous sentences had been vacated by appeal and habeas corpus. *State* v. *Parks,* 36 N.E.2d 42, presents the problem of a sentence pronounced and execution thereof suspended by a court without power in law to suspend it. At a subsequent term it was ordered that the sentence be put into effect. In *State* v. *Shilinsky,* 81 N.W.2d 444 (1957), an oral sentence was corrected two days later by another valid sentence. As in *Hayes, supra,* the action was upheld.

---

[4] This provision has not governed here and I need not stop to analyze the same in the light of the constitutional prohibition. The determination on the validity of that Federal Rule, if and insofar as it offends the constitutional guarantee against double jeopardy, is a question for the Supreme Court of the United States. So far I do not know of any specific pronouncement of that Court on this question.

Let us examine the facts as stated by the Supreme Court of New Mexico in *State* v. *Peters*, 366 P.2d 148 (1961), immediately preceding that part of the decision copied by this Court. Defendant was convicted of escape from a prison while serving a sentence. He was tried for the escape and on September 9, 1960 defendant *pleaded guilty* and was sentenced to serve two years, the latter to run *concurrently* with the previous sentence. On October 4 the State moved to vacate the sentence because it was contrary to law. The statute provided that a conviction of escape could not run concurrently with the previous sentence. The sentence was vacated, *but defendant moved to change his plea of guilty* to one of not guilty. After a trial by jury and as a result of this *second trial*, he was sentenced for *escape*; this time the sentence was not concurrent, as provided by statute. The decision cited should be understood in the light of those facts, which did not involve a double jeopardy constitutional problem because defendant changed his original plea and was retried at *his instance.*

The citation in the opinion (footnote 3) from 5 Wharton, Criminal Law and Procedure, § 2191, which deals in general with amending and vacating sentences, should be read as a whole. It begins by saying that a court has power during the term to expunge an irregular sentence and to pass sentence anew, or to amend or correct a sentence, but the *power ceases* when the sentence has been put into operation, and the court cannot impose a new or different sentence *increasing the punishment*, even at the same term at which the original sentence was imposed; that, *a fortiori*, a sentence which has been partly executed cannot be set aside or changed by the trial court so as *to increase* the punishment after the end of the term of court at which it was rendered; that according to some of the cases, when a criminal judgment has been partly executed by the defendant, the trial court has power, at the term at which the judgment was rendered, to revise it

*by reducing* the punishment originally imposed, and that in other jurisdictions it has been held that a trial court cannot set aside a sentence and impose a lighter penalty *after* the prisoner has been committed and entered upon his first sentence; that other jurisdictions have held that a trial court cannot set aside a sentence and *grant a new trial* after defendant has been committed, regardless of whether there was error which prevented him from having a fair trial; that a court may not amend a sentence if the term at which it was rendered has expired, and in some states in which the courts sit in continuous session, rather than by terms (as in Puerto Rico), statutes give control over a judgment for a specified number of days after its entry.

The foregoing is the substance of the topic stated by Wharton preceding the citation of the court.[5]

---

[5] To understand better the commentator, I will refer briefly to the cases cited by him when he says that a "void" sentence may be amended even after execution has begun. He cites first *In re Bonner*, 151 U.S. 242, and *De Benque* v. *United States*, 85 F.2d 202, the situation of facts of which I have already commented on. In *Estate* v. *O'Keith*, 15 P.2d 443, also cited in support of that statement, the court sentenced a minor *without jurisdiction*. It was said that the rule that a sentence cannot be set aside after it has been satisfied in part is not applicable where the court was wholly without *jurisdiction*. The action in this case was in favor of the convicted minor, which is a common thing, and the State appealed from the order setting aside the judgment.

*People* v. *Murphy*, 2 N.Y.S.2d 731, involved a determinative sentence which should have been indeterminative between 25 years and life. The minimum was not changed. In *State* v. *Parks*, 36 N.E.2d 42, a sentence was suspended when it was rendered, without legal authority to suspend it. What actually happened was that later it was directed that it be put into effect. In *State* v. *Lee Lim*, 7 P.2d 825, the previous judgment was set aside as a result of a habeas corpus. *Royster* v. *Smith*, 77 S.E.2d 855, also involved a habeas corpus based on the nullity of two burglary sentences of less than the minimum as basis for the validity of a third sentence. It was said that the sentences were voidable and not void, and that the prisoner could not be detained on burglary counts since he had served out his sentence, but that he could not be released on habeas corpus until he had served the third sentence. *State* v. *Dooly*, 128 P.2d 486, involved a judgment which was subsequently corrected only for the purpose that the proper elements should appear on the face thereof, but the punishment between the first and the second sentences was not changed. The

Notwithstanding those federal cases, most of which have been decided under the apparent authority of *Bozza* or under the influence of Rule 35 *supra* which in our midst is not positive law, and which must be evaluated in the light of their own facts and circumstances, I believe that the provision of our Constitution on double jeopardy affords protection in the present case, under the circumstances thereof. The fact of whether or not execution of the sentence has begun—which in connection with this constitutional guarantee has been considered as a basic fact throughout the classical judicial expression—has greater transcendence than being merely a chronological divisor. On that fact depends whether or not there is judicial authority or power for the second action. It is of utmost public interest that criminal

---

second sentence set forth that defendant had been adjudged to be an habitual criminal, a fact which was not set forth in the first sentence. The punishment was not changed.

And to understand better the concept of *erroneous* or *irregular* employed by Wharton in stating that if the sentence is merely irregular or erroneous, such sentence is not invalid or "void" and comes within the rule that it cannot be changed after execution thereof has begun, let us examine the cases cited by him: *Williams v. United States*, 148 F.2d 923, *cert. denied*, 325 U.S. 888, involved an *appeal* taken by defendant from an order setting aside a sentence which he claimed was invalid. The facts in detail, which have nothing in common with a situation such as that in the case at bar, appear at 148 F.2d 923.

In *People v. Conley*, 150 Pac. 412, the original sentence was *in excess* of the permissible maximum. It was afterwards modified in order to reduce it to the maximum, and it was held that since the sentence was merely *erroneous* and not *"void"*, the trial court *had no power after commitment to modify it*. (In this case the action was favorable to defendant.) In *Lyon v. Robinson*, 56 N.E.2d 546, the second sentence was less than the first and the State appealed. It was held that the first sentence was correct although there was a procedural defect in not determining whether defendant was armed during the commission of the robbery, which was subsequently established. In this case a sentence which was originally legal and correct was reinstated.

Lastly, in *Hickman v. Fenton*, 231 N.W. 510, it was held that a sentence for less than the minimum term was not *"void,"* and that if the court had jurisdiction of the accused and of the offense, the sentence was not void whatever errors may have preceded such sentence.

Those cases, cited by Wharton, help to evaluate his statement.

as well as civil proceedings be brought to an end, and that an accused as well as a litigant in a civil action be not indefinitely subjected to the inconveniences and persecutions of a criminal prosecution which should come to an end, and which arrives when the accused after conviction passes to the executive power to serve his sentence. At that point the judicial power ceases to make further determinations at the instance of the State. That is the vital consideration of public policy which is at the very bottom of the constitutional guarantee against double risk and double jeopardy. The prohibition against double jeopardy, within the meaning and purpose of the constitutional provision, is even more transcendental than double punishment—which under specific circumstances may be validly imposed for the same wrongful acts.

On these considerations, *Green* v. *United States*, 355 U.S. 184 (1957), one of the cases cited by me and which was decided subsequent to that of *Bozza*, is significant. The absolute implied waiver, sanctioned in the doctrine, of not being twice put in jeopardy in cases in which the previous prosecution or sentence is assailed by defendant himself, is no longer so absolute. A verdict of murder in the second degree having been returned against Green in a prosecution in which he was tried for first degree, and the sentence having been vacated on appeal and a new prosecution ordered, the constitutional provision protected him against the original prosecution for first degree.[6]

---

[6] In memory of the Justices who in the past occupied a place among us, perhaps it should be said that 45 years prior to the decision of *Green*, in *People* v. *Peña*, 18 P.R.R. 870 (1912), they said: "It is well settled by the consistent current of authority that when one is charged with an offense which includes another offense of lower grade, and is regularly tried and found guilty only of the lesser offense, the verdict operates as an acquittal of the offense charged, and he cannot be again tried for that offense, *though a new trial is granted upon his* motion". (Italics ours.)

It was so stated by our Justices notwithstanding that seven years

It is true, it has been said, that a previous illegal action has never put a person in jeopardy, and the constitutional bar is not applicable to a subsequent prosecution or action. However, such nullity is in the sense of the *nonexistence*. A typical case is the lack of judicial power due to want of jurisdiction or legal authority to act in a prosecution or matter.

In the case at bar there was no nonexistence of the prosecution. Defendant was prosecuted before a court with jurisdiction over the offense and on an information filed with authority therefor. The sentence was unquestionably erroneous, illegal insofar as it did not comply with the law or, we may say, void in that sense, but it was not nonexistent because of lack of the basic elements of the exercise of the judicial power.

In two old California cases, *People* v. *Horn*, 11 Pac. 470 (1886), and *People* v. *Roberts*, 45 Pac. 1016 (1896), the court, in violation of law, *instructed* the jury to bring a verdict of not guilty, which it did, though the law only authorized the judge to *advise* the jury that they could bring a verdict of not guilty. The Supreme Court of California afforded constitutional protection to those defendants sought to be tried on the basis of the judge's error, even though in less specific terms such action could be considered void as being contrary to law.

In this case the trial judge himself employs the proper term in stating that "through inadvertence" he passed sentence "without taking into consideration the allegation of subsequent offense." The trial judge has contributed for more than 20 years to the prestige of our judiciary, with a great judicial capacity and integrity. However, these things occur at times everywhere. It is precisely when they occur

---

prior thereto, in 1905, the Supreme Court, in *Trono* v. *United States*, 199 U.S. 521, 533, had stated as the "better doctrine" one which was entirely contrary to that formerly stated in *Peña.*

that the protection against double jeopardy exists. If the original sentence had complied with the law and everything had been legal, it would not have been necessary for Lozano Díaz that such constitutional guarantee be written in our Bill of Rights. One may rationalize on such guarantee, but the truth that cannot be held back is that this defendant was put once again by the State in jeopardy of punishment.

I realize that Lozano Díaz may escape the punishment due him. Sometimes it is necessary to pay that price in order to safeguard the constitutional values.

Only a few weeks ago the Supreme Court of the United States attached full significance to that constitutional value, even though the defendant escaped punishment, in *Downum* v. *United States*, 372 U.S. 734 (31 L.W. 4369), in which a case was continued and the jury discharged because the key witness on two counts was not present. The defendant moved that the trial continue on the rest of the counts and his motion was denied. No evidence was heard. Two days later the case was called again and a second jury impaneled, and petitioner pleaded former jeopardy. The Supreme Court acknowledged to defendant the full protection of the constitutional guarantee: "For the prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.'" Further on: "We resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain and arbitrary judicial discretion."

Because the Superior Court of Caguas was without judicial power to open a case already closed and to sentence appellant anew, and because if it had had that power or that discretion such action violated the constitutional guarantee involved herein, I dissent from the decision of the Court sanctioning the foregoing.